## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TAMMY ALLISON HOLLOWAY,

    Plaintiff,

    v.

MERRICK GARLAND, Attorney General of the United States of America, *et al.*,

    Defendants.

Civil Action No. 24-226 (BAH)

Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

Plaintiff Tammy Allison Holloway, proceeding *pro se*, initiated this action on January 25, 2024, seeking relief from Merrick Garland, in his official capacity as Attorney General for the United States of America; Colette Peters, in her official capacity as Director of the Federal Bureau of Prisons ("BOP"); and Former Assistant Attorney General Lee J. Lofthus, in his official capacity as a board member of the Federal Prison Industries ("FPI") (collectively, "defendants"), for alleged workplace discrimination and retaliation during her employment as an attorney for BOP.  *See* Compl. at 1–2, ECF No. 1.[1]  Plaintiff's complaint alleges violations of, *inter alia*, Title VI and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq., 2000e et seq.; Sections 501 and 505 of the Rehabilitation Act of 1973; and Titles I and V of the Americans with Disability Act of 2010 ("ADA").

---

[1]     Although plaintiff proceeds *pro se*, the typical "less stringent standards" applied to evaluate *pro se* complaints, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), do not apply in this case.  As the D.C. Circuit recently held, "[t]he requirement that courts construe pro se pleadings liberally does not ordinarily apply to pro se lawyers." *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024).  Plaintiff in this case "has formal legal training," *id.* at 539; *see* Compl. ¶¶ 9–10, and "years of legal work experience," *Spence*, 109 F.4th at 539; *see* Compl. ¶¶ 10–16, including roughly a decade of experience working as an attorney for the U.S. Department of Justice ("DOJ"), *see* Compl. ¶ 12.  Plaintiff also has particular expertise in employment law, the subject of her complaint, having worked as an Assistant General Counsel in the Employment Law Branch of BOP for three years. *Id.*

Defendants have moved to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, or alternatively Rule 12(b)(6), for failure to state a claim upon which relief can be granted. Defs.' Mot. to Dismiss ("Defs.' MTD"), ECF No. 11. For the reasons explained below, defendants' motion is granted.

## I.    BACKGROUND

The factual allegations derived from plaintiff's complaint and separately filed exhibits in support thereof, *see* ECF No. 3, and procedural history of this case are summarized below.[2]

### A.    Factual Background

Plaintiff previously worked in various legal positions for the U.S. Department of Justice ("DOJ") between 2008 and 2020, including in the Office of the Pardon Attorney ("OPA"), Executive Office of U.S. Attorneys ("EOUSA"), and BOP. She describes her roles as serving as an "extern" at DOJ in the fall of 2008, as a temporary legal assistant in OPA in the spring of 2009, and, after graduating from law school and passing the Bar, as an attorney in OPA in October 2010. Compl. ¶¶ 11–12. From the summer of 2015 to the summer of 2017, plaintiff was detailed as a Special Assistant United States Attorney in the U.S. Attorney's Office for the District of Columbia and was employed as an Assistant General Counsel in the Employment Law Branch of BOP from October 2017 until October 2020, when she resigned from federal service. *Id.* ¶¶ 12, 16. During her period of employment, plaintiff alleges that defendants were aware that plaintiff suffers from anxiety, which manifested itself in a variety of physical symptoms. *Id.* ¶ 7.

---

[2]    Plaintiff's exhibits to the complaint were filed under seal to protect plaintiff's confidential health information contained therein. *See* ECF No. 3; Min. Order (Jan. 25, 2024) (granting plaintiff's motion to file under seal). Citations to these exhibits are made to explain the Court's reasoning and are unsealed to the extent necessary to do so, though no confidential information is revealed that is not already discussed in other public filings in this case.

While working for BOP, plaintiff transferred her duty location from BOP's Central Office, located in Washington, D.C., to BOP's South Central Regional Office in Grand Prairie, Texas. *Id.* ¶ 15. At BOP, she reported to Adam Boyer as her first-line supervisor, Doug Goldring as her second-line supervisor, and Chung-Hi Grace Yoder as her third-line supervisor. *Id.*

On September 27, 2019, plaintiff filed a formal grievance with DOJ's Office of General Counsel against her supervisors Yoder and Boyer for failing to act on her complaints about her previous supervisor and for Boyer's issuance of a negative performance log entry against plaintiff as a result of events that occurred at a training held earlier that month. Ex. O, ECF No. 3-3 at 93–100; *see also* Compl. ¶ 38; Defs.' Mem. Supp. Defs.' Mot. Dismiss ("Defs.' Mem.") at 6, ECF No. 11. Plaintiff was informed that this grievance was denied as "without merit" on October 11, 2019. Ex. Q, ECF No. 3-3 at 118–19; *see also* Compl. ¶ 40.

### 1.    First EEO Complaint: BOP-2020-0181

On October 4, 2019, plaintiff initiated formal Equal Employment Opportunity ("EEO") counseling with the BOP, alleging she had been discriminated against on the basis of race, sex/gender, disability, parental status, and reprisal in "several incidents" involving Yoder and Boyer. *See* Ex. P, ECF No. 3-3 at 115; Compl. ¶ 39. Following counseling, plaintiff filed a formal EEO complaint on November 14, 2019, alleging these same discrimination bases, plus national origin discrimination, *see* Ex. R, ECF No. 3-3 at 124; Defs.' Mem. at 7, arising from seven alleged incidents: (1) BOP denied her September 2019 grievance "without looking into the matter" or speaking with plaintiff or other witnesses, Ex. R at 125; Defs.' Mem. at 7; (2) Yoder and Boyer assigned an EEO case to plaintiff and assigned her a mentor, who plaintiff had previously complained "refuse[d] to mentor" her or speak to her about cases, Ex. R at 125; Ders.' Mem. at 7; (3) Yoder and Boyer refused to "acknowledge or timely submit" plaintiff's compensatory travel

form for work travel in September 2019, *id.*; (4) plaintiff was told she was overdue on taking a required Domestic Violence, Sexual Assault, and Stalking in the Workplace training, despite not receiving prior notification that the training was required or a "trigger warning" about the training's content, *id.*; (5) Boyer forced plaintiff to take an hour of leave for arriving late to a training, *id.*; (6) Yoder, Boyer, and plaintiff's previous supervisor assigned her to deal with an arbitration addressing a domestic violence fact pattern similar to plaintiff's personal experience, despite knowing plaintiff suffered from anxiety due to her personal experiences, Ex. R at 125; Defs.' Mem. at 7–8; and (7) Yoder reprimanded plaintiff via email, copying other supervisors, about notification procedures, Ex. R at 125; Defs.' Mem. at 8.

In early 2020, plaintiff again attempted to initiate EEO counseling, citing three additional alleged incidents of discrimination against her: (1) the failure of two employees to recuse themselves from involvement with plaintiff's EEO complaint despite plaintiff working directly with both employees on "a number of matters in [her] official capacity"; (2) comments made to plaintiff dismissing her request to have professional pictures taken; and (3) plaintiff not being selected for an Assistant General Counsel position "despite being qualified for the position" and the individuals selected for the position allegedly lacking the same qualifications. *See* Ex. S, ECF No. 3-3 at 130; Defs.' Mem. at 8. Plaintiff was informed that she could amend her open EEO complaint with the additional incidents, *see* Ex. S, but told the EEO counselor that she wanted to open a separate case, as the three new alleged incidents of discrimination were "not like or related to [the] current allegations." Ex. S at 129. Ultimately, plaintiff's additional claims were included in her ongoing EEO complaint. *See* Compl. ¶ 42; Defs.' Mem. at 8. All of plaintiff's discrimination claims were denied in a Final Agency Decision ("FAD") received by plaintiff on December 1, 2020. *See* Ex. Y, ECF No. 3-3 at 154–182; Compl. ¶ 47.

## 2.      Second EEO Complaint: BOP-2020-02110

On September 8, 2020, plaintiff contacted an EEO counselor to initiate a complaint about discrimination against her based on her race, national origin, sex, parental status, disability, and reprisal, *see* Ex. E, ECF No. 3-3 at 59; Ex. F, ECF No. 3-3 at 62; Compl. ¶ 28, and subsequently filed a formal EEO complaint on October 13, 2020, Ex. F; Compl. ¶ 29.  Plaintiff alleged seven instances of discrimination against her: (1) Goldring denied a request for a reasonable accommodation for a conference call with himself and Yoder that triggered her anxiety; (2) Yoder refused to join the conference call despite plaintiff's request, "given the racial and gender bias" plaintiff alleged was being displayed on the call; (3) all three supervisors asked the Human Resources Department to request that plaintiff immediately complete EEO and ethics training after plaintiff sent an email about facing racial bias in a case she was handling; (4) the three supervisors did not acknowledge the discrimination plaintiff faced from an opposing counsel in a case or her successful disposition of the case; (5) two employees of the DOJ Complaint Adjudication Office processed the FAD in plaintiff's first EEO complaint (BOP-2020-0181) despite plaintiff previously working with both of them "in a number of matters in [her] official capacity"; (6) Boyer, Yoder, and a third BOP employee denied plaintiff a number of workplace benefits and opportunities by "refusing to rate [her] as excellent on [her] performance evaluation without explanation"; and (7) plaintiff was not selected for an Attorney-Advisor position in BOP's Designation and Sentence Computation Center.  Ex. F at 63–64; *see also* Defs.' Mem. at 9–10. On December 9, 2020, plaintiff informed the investigation agency that she had concerns about the investigator assigned to the case and requested the assignment of a new investigator to the matter, Ex. J., ECF No. 3-3 at 77; Defs.' Mem. at 10, but this request was denied in an email the next day, Ex. J at 78; Defs.' Mem. at 10, and later denied by BOP, *see* Ex. K, ECF No. 3-3 at 82; Defs.'

Mem. at 10.  Plaintiff received a "four-volume report of investigation" on February 4, 2021, and received, from BOP's Complaint Adjudication Office, correspondence indicating they had received her complaint on March 13, 2023.  Compl. ¶¶ 35–36.  As of the date plaintiff filed her complaint in this matter, she had not received an FAD on her second formal EEO complaint.  *Id.* ¶ 36.

### 3.    Workers' Compensation Claim

Plaintiff alleges that she suffered a workplace injury in February 2020, for aggravation of her generalized anxiety disorder, *see* Compl. ¶ 48; Ex. AA, ECF No. 3-3 at 195, which claim was accepted by the U.S. Department of Labor on November 3, 2020, *see* Ex. AA at 195; Compl. ¶ 49, four days after her resignation from federal service on October 30, 2020, *see* Compl. ¶ 16.

### 4.    Additional Allegations

In addition to plaintiff's two formal EEO complaints against BOP, detailed above, she also sets out in her complaint reference to multiple other formal complaints of discrimination filed by plaintiff during her DOJ employment, including a 2014 formal EEO complaint about experiences working in OPA, *see* Compl. ¶¶ 50–57; a 2014 complaint to the DOJ Inspector General about discrimination in OPA, *see id.* ¶ 58; a 2015 grievance for discrimination filed against her supervisor at OPA, *see id.* ¶ 60; and attempted whistleblower disclosures, made in 2015, about alleged violations of law committed by OPA, *see* Ex. MM, ECF No. 3-3 at 276; Ex. NN, ECF No. 3-3 at 280; Compl. ¶¶ 61–62.

Plaintiff's complaint also alleges that "[d]efendants have been intentionally interfering with [her] personal, professional, and political life" since her resignation from federal service on October 30, 2020.  Compl. ¶ 81.  She has repeated and elaborated on these allegations in other filings in the case seeking emergency injunctive and other relief, including that (1) defendants and

other government agencies are surveilling her, pursuant to orders issued pursuant to the Foreign Intelligence Surveillance Act (FISA) by the Foreign Intelligence Surveillance Court (FISC), *see* Pl.'s Mem. of P. & A. Supp. Pl.'s Emergency *Ex Parte* Mot. for a Temporary Restraining Order and/or Preliminary Injunction ("Pl.'s First Mot. TRO") at 2–3, ECF No. 2-1; (2) defendants are "spreading malicious rumors about [p]laintiff and . . . conspir[ing]" with other individuals and organizations to "create false narratives" about her, *id.* at 2; (3) defendants and other employees are "urging, encouraging, pressuring, or inducing" suppression of plaintiff's free speech on social media and may have issued "law enforcement orders" to various social media companies, *id.*; (4) defendants have unlawfully designated plaintiff as armed and dangerous in retaliation for protected activities, *see* Pl.'s Emergency *Ex Parte* Mot. for a Temporary Restraining Order and/or Preliminary Relief ("Pl.'s Second Mot. TRO") at 1–2, ECF No. 26; and (5) defendants used the "Circuit Court for Montgomery County, Maryland," *id.* at 3, to take plaintiff's minor child away from her, also in retaliation, *see id.* at 2–3; among other such allegations.

### B.    Procedural History

Plaintiff initiated this case on January 25, 2024, seeking compensatory and punitive damages, costs and attorney's fees, and affirmative and equitable relief.  *See* Compl.  On the same day, she sought an Emergency Temporary Restraining Order or Preliminary Injunction, alleging that defendants were conducting retaliatory surveillance of her and had violently broken into her residence.  Pl.'s Emergency *Ex Parte* Mot. for a Temporary Restraining Order and/or Preliminary Injunction, ECF No. 2.  This request for injunctive relief was denied, upon finding both that plaintiff failed to satisfy the standard for a TRO or Preliminary Injunction and that the break-in, which had happened 52 days before plaintiff filed her motion, did not qualify as an emergency. Min. Order (Jan. 25, 2024).  Plaintiff has continued to raise these and similar allegations in other motions and filings throughout the case, including seeking emergency relief two additional times.

*See, e.g.*, Pl.'s Second Mot. TRO; Pl.'s *Ex Parte* Emergency Mot. for a Temporary Restraining Order and Preliminary Injunction ("Pl.'s Third Mot. TRO"), ECF No. 31. Both motions were denied for essentially the same reasons articulated the first time she sought such relief. *See* Min. Order (Sept. 10, 2024).

On May 14, 2024, defendants filed the pending motion to dismiss. *See* Defs.' MTD. Two weeks later, on May 28, 2024, plaintiff moved to amend her complaint. Pl.'s First Mot. to Amend/Correct Complaint, ECF No. 19. In accordance with D.D.C. Local Civil Rule LCvR 7(i) and the Standing Order in the case, *see* Standing Order ¶ 7.e., ECF No. 4, plaintiff was directed to file a redline comparison between her original complaint and her proposed amended complaint, Min. Order (Aug. 27, 2024), but, after she failed to respond or comply with the order, plaintiff's motion to amend her complaint was denied two months later, Min. Order (Oct. 18, 2024). Plaintiff was granted an extension of time to respond to defendants' Motion to Dismiss, with directions to respond by June 11, 2024. Min. Order (May 24, 2024). Although plaintiff has continued filing various other papers on the docket, she has filed no response to defendants' Motion to Dismiss, despite having been cautioned about the potential consequences of failing to respond, *see* Order, ECF No. 20 (citing *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988)).

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). A claim is facially plausible when the plaintiff pleads facts that are more than "merely consistent with a defendant's liability" and that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation marks and citations omitted); *see also Banneker*

*Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires more than a sheer possibility that a defendant has acted unlawfully." (quotation marks and citation omitted)). "[A] complaint survives a motion to dismiss even if there are two alternative explanations, one advanced by the defendant and the other advanced by the plaintiff, both of which are plausible." *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1104 (D.C. Cir. 2021) (alterations in original accepted; quotation marks and citation omitted).

In deciding a motion under Rule 12(b)(6), a court must consider the whole complaint, accepting all factual allegations in the complaint as true, "even if doubtful in fact," and construing all reasonable inferences in the plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022). A court, however, does not "accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations in original accepted and citation omitted); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alterations in original accepted and citation omitted).

### B.     Federal Rule of Civil Procedure 12(b)(1)

"Article III of the Constitution prescribes that '[f]ederal courts are courts of limited subject-matter jurisdiction' and 'ha[ve] the power to decide only those cases over which Congress grants jurisdiction.'" *Bronner ex rel. Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020) (alterations in original) (quoting *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012)); *see also Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("'Federal courts are courts of limited

jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))).  Absent subject-matter jurisdiction over a case, the court must dismiss it.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)); Fed. R. Civ. P. 12(h)(3).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over the claim at issue. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  When considering a motion to dismiss under Rule 12(b)(1), the court must determine jurisdictional questions by accepting as true all uncontroverted material factual allegations contained in the complaint and "constru[ing] the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged."  *Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 281 (D.C. Cir. 2022) (second alteration in original) (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)).  The court may also, "[a]s necessary, [] cull additional facts from other parts of the record."  *West v. Lynch*, 845 F.3d 1228, 1231 (D.C. Cir. 2017) (citing *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (in deciding subject matter jurisdiction, courts may "consider[] facts developed in the record beyond the complaint")).

## III.    DISCUSSION

Although not entirely clear from her complaint, plaintiff seemingly raises the following related claims against defendants: (1) workplace discrimination based on (a) plaintiff's disability, in violation of the ADA and the Rehabilitation Act, Compl. ¶¶ 106–22; (b) plaintiff's National Origin, *id.* ¶¶ 123–24; (c) sex, *id.* ¶¶ 125–26; (d) race and color, *id.* ¶ 127; and (e) parental status, *id.* ¶ 128; (2) creation of a hostile work environment resulting in constructive discharge, *id.* ¶¶

130–31; (3) retaliation and reprisal resulting in constructive discharge, in violation of the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302(b)(8), and "whistleblower protection provision of the False Claims Act," Compl. ¶¶ 132–33. These claims fall into two categories: first, that defendants discriminated against plaintiff on the basis of a number of different protected characteristics, which plaintiff alleges created a hostile work environment and resulted in her resignation from BOP, which she alleges amounts to a constructive discharge, *see id.* ¶¶ 130–31, 133; and second, claims that defendants unlawfully retaliated against plaintiff for protected disclosures, in violation of whistleblower protections. Each category is addressed *seriatim.*

A.    **Whistleblower Protection Act Claims**

Plaintiff's claims that defendants violated federal whistleblower protections suffer from multiple fatal flaws requiring dismissal. First, as the government correctly argues, plaintiff's allegations of retaliation fail to state a claim under the WPA. *See* Defs.' Mem. at 31–33. The government acknowledges that the complaint alleges plaintiff made two protected whistleblower disclosures during her employment with DOJ, both of which were dismissed in 2015 and involved allegations against OPA. *See id.* at 32–33; *see also* Compl. ¶¶ 61–62. Nowhere, however, does the complaint allege "any disclosures against BOP" or that any "BOP employees were aware of [plaintiff's] protected disclosures and took a personnel action proscribed by the [WPA] against her." Defs.' Mem. at 32–33. Instead, plaintiff claims merely that she "previously engaged in protected activities, including a prior EEOC case," and that she has "subsequently been under FBI surveillance as well as experienced a number of unusual and devastating personal and professional experiences while employed at BOP without explanation," from which she draws the inference that "all of the unresolved issue[s] in [her] personal, professional, and political life appear to be caused by Defendants retaliating against her since her most recent EEO case . . . is based on those prior protected disclosures." Compl. ¶ 132.

To the extent that plaintiff concedes that she has experienced "unresolved" "devastating personal and professional experiences," all "without explanation," *id*., this lack of facts or evidence to support her inference that defendants are to blame falls far short of stating a "plausible claim for relief," *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556), under the WPA and must therefore be dismissed for failure to state a claim.  *See Nurriddin*, 818 F.3d at 756 (finding that courts do not have to accept a plaintiff's inferences if they are "unsupported by the facts set out in the complaint" (citation omitted)); *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Even were these threadbare allegations sufficient to state a claim under the WPA, defendants are also correct that subject matter jurisdiction to adjudicate her retaliation claims is lacking because plaintiff failed administratively to exhaust these claims before filing suit.  *See* Defs.' Mem. at 32–33.  The WPA requires administrative exhaustion before a district court may hear an employee's retaliation claim.  The D.C. Circuit has made clear that "[u]nder no circumstances does the WPA grant [a] District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance." *Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2002); *see also Greenhouse v. Geren*, 574 F. Supp. 2d 57, 64–65 (D.D.C. 2008) (describing the procedural steps an employee must take to raise a whistleblower protection claim).  Generally, an employee must first bring any WPA claim of unlawful reprisal to the Office of Special Counsel (OSC) to be investigated.  *Stella*, 284 F.3d at 142; *Greenhouse*, 574 F. Supp. 2d at 64; *see also Bourdon v. Mabus*, 813 F. Supp. 2d 200, 206 (D.D.C. 2011).  If no wrongdoing is found, the employee may then bring the claims directly to the Merit Systems Protection Board (MSPB). *Stella*, 284 F.3d at 142; *Greenhouse*, 574 F. Supp. 2d at 64.  Certain types of adverse action claims may be brought directly to the MSPB, bypassing the OSC, such as "(1) a removal; (2) a suspension

for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less." *Greenhouse*, 574 F. Supp. 2d at 65 (citing 5 U.S.C. § 7512). In either case, decisions of the MSPB are appealable to the Federal Circuit. *See Stella*, 284 F.3d at 142; *Greenhouse*, 574 F. Supp. 2d at 65.

Employees can also claim a violation of the WPA via a so-called "mixed case," which is "an adverse personnel action subject to appeal to the MSPB coupled with a claim that the action was motivated by discrimination." *Greenhouse*, 574 F. Supp. 2d at 65 (citing *Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999)). A qualifying adverse personnel action is one of the five enumerated above. *See id.* An employee seeking to file a mixed case must either file a complaint with her agency's EEO office or directly file with the MSPB. *Id.* (citing *Butler*, 164 F.3d at 638; 29 C.F.R. §1614.302(b)). If the EEO office does not make a decision within 120 days, the employee may appeal to the MSPB or file an action in district court. *Id.* (citations omitted).

Here, plaintiff has failed to follow the procedural steps required to exhaust administratively her retaliation claims under the WPA. The complaint "does not even allege," *Bourdon*, 813 F. Supp. 2d at 207, that she ever filed a claim with the OSC or the MSPB, *see generally* Compl. To the extent that any of plaintiff's whistleblower claims might raise a non-mixed case, the failure to pursue her claims in the OSC or MSPB requires dismissal for failure to exhaust her administrative remedies.

Meanwhile, any mixed claim plaintiff may be attempting to raise would necessarily be based on plaintiff's claim of constructive discharge, *see* Compl. ¶¶ 130–31, 133, because she does not claim that she was suspended, suffered a reduction in pay or grade, or was furloughed, *see generally id.* Here, however, plaintiff never filed an EEO complaint after she left federal service due to an alleged constructive discharge. *See generally id.* Indeed, her final EEO complaint was

initiated on September 8, 2020, more than a month before she resigned from BOP. *See supra*, Part

I.A.2. As this timeline confirms, plaintiff never filed with the EEO any claim alleging that she

was improperly removed from her position via constructive discharge—nor does she allege that

any of her EEO complaints claimed constructive discharge, *see* Compl. ¶¶ 28–47; *supra*, Parts

I.A.1 and 2—leading to the inexorable conclusion that plaintiff has similarly failed to exhaust her

administrative remedies for any possible mixed claims under the WPA. Accordingly, subject

matter jurisdiction is lacking to consider any claims successfully alleged under the WPA, *see*

*Stella*, 284 F.3d at 142,[3] and thus these claims must be dismissed, pursuant to Federal Rule of Civil

Procedure 12(b)(1), *see id.* at 139 (affirming dismissal of WPA claims not first brought to the OSC

or MSPB for lack of jurisdiction).

### B.    Workplace Discrimination Claims

Plaintiff's remaining claims allege that, while working for BOP, she faced unlawful

discrimination and disparate treatment on the basis of her disability status, Compl. ¶¶ 106–22;

national origin, *id.* ¶¶ 123–24; sex, *id.* ¶¶ 125–26; race and color, *id.* ¶ 127; and parental status, *id.*

¶ 128. Plaintiff also alleges that this discrimination created a hostile work environment that forced

her to leave her federal employment, constituting a constructive discharge. *See id.* ¶¶ 130–31, 133.

Two threshold matters require clarification. First, defendants are correct that the U.S.

Attorney General is the only proper defendant for these claims. *See* Defs.' Mem. at 13–14.

Plaintiff's workplace discrimination claims allege "discrimination in the terms and conditions of

her employment" with BOP under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

---

[3]    Plaintiff also purports to raise a whistleblower claim under the False Claims Act, *see* Compl. ¶ 133, but
such a claim is preempted by the Civil Service Reform Act, which "provides the exclusive set of remedies for claims
brought pursuant to the WPA," *Harris v. Bodman*, 538 F. Supp. 2d 78, 82 (D.D.C. 2008) (citing *Richards v.
Kiernan*, 461 F.3d 880, 885 (7th Cir. 2006)).

2000e et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.  Compl. at 1–2.[4]  For a federal employee suing for workplace discrimination under Title VII, "[t]he only proper defendant . . . is the head of the department, agency, or unit in which the allegedly discriminatory acts transpired."  *Hackley v. Roudebush*, 520 F.2d 108, 115 n.17 (D.C. Cir. 1975) (quotation marks omitted).  "Since the Rehabilitation Act draws from the procedures of Title VII," the same is true under that statute.  *Paegle v. Dep't of the Interior*, 813 F. Supp. 61, 64 n.2 (D.D.C. 1993) (citing *Barsten v. Dep't of the Interior*, 896 F.2d 422, 423 (9th Cir. 1990)); *see also Marshall v. Potter*, 634 F. Supp. 2d 66, 68 n.1 (D.D.C. 2009) (quoting *Paegle*, 813 F. Supp. at 64 n.2).  As a component of the DOJ, *see, e.g.*, *Tyree v. Hope Vill., Inc.*, 677 F. Supp. 2d 109, 110 (D.D.C. 2009), BOP is not a proper defendant, *see, e.g.*, *Mitchell v. Garland*, No. 20-cv-3083 (RC), 2022 WL 703906, at *4 (D.D.C. Mar. 9, 2022) (finding, in a Title VII suit, that "Title VII provides a cause of action only against the head of the relevant department—in this case, Attorney General Garland" and holding that "the BOP is not a proper defendant, and all claims against it must be dismissed").  Consequently, defendants Peters, the Director of BOP, and Lofthus, a board member of FPI and former Assistant Attorney General, are not properly named as defendants and must be dismissed.

A second threshold issue is that defendants are also correct that plaintiff may only raise claims related to her second, and most recent, EEO complaint.  *See* Defs.' Mem. at 14–15.  Title VII establishes a 90-day window for "an employee or applicant for employment" who is

---

[4]    The complaint contains reference to additional statutes and legal authorities, including the nondiscrimination section of the Omnibus Crime Control Safe Streets Act of 1968, 28 U.S.C. § 3789(d)c; the First Amendment of the Constitution of the United States of America; and 28 U.S.C. § 1331, but the text of the complaint fails to allege any discernible claims under any of these authorities.  Even if claims were intended under these authorities, however, they would be preempted by Title VII and the Rehabilitation Act, which provide the exclusive remedies for federal employment discrimination claims.  *See Brown v. General Servs. Admin.*, 425 U.S. 820, 828–29, 834–35 (1976); *Howard v. Pritzker*, 775 F.3d 430, 433 (D.C. Cir. 2015); *Paegle v. Dep't of the Interior*, 813 F. Supp. 61, 66–67 (D.D.C. 1993) ("[W]hen a federal employee seeks to redress rights guaranteed by the Rehabilitation Act, that Act preempts other actions to redress the same discrimination. (citing *Shirey v. Devine*, 670 F.2d 1188, 1191 n.7 (D.C. Cir. 1982))).

"aggrieved by the final disposition of [her] complaint . . . [to] file a civil action" after receiving "notice of final action taken by a department, agency, or unit." 42 U.S.C. § 2000e-16(c). Additionally, if an employee or applicant files a complaint alleging discrimination and receives no "judicially reviewable action" on their complaint after 120 days of its filing, they may "file a civil action to the same extent" as if they had received a decision. 5 U.S.C. § 7702(e)(1), (e)(1)(A). As defendants concede, *see* Defs.' Mem. at 15, plaintiff's October 13, 2020, EEO Complaint, numbered BOP-2020-02110, *see supra*, Part I.A.2., provides a timely basis for suit, since, at the time the instant complaint was filed, in January 2024, plaintiff had yet to receive a final decision or other judicially reviewable action in this EEO complaint, after a wait of over three years upon filing. *See* Compl. ¶ 36.

By contrast, plaintiff's November 13, 2019, EEO Complaint against BOP, number BOP-2020-0181, *see supra*, Part I.A.1., and the additional EEO claims and actions raised in the complaint, *see supra*, Part I.A.4., are untimely. For example, the Final Agency Decision denying plaintiff's claims in the 2019 EEO complaint was received by her on December 1, 2020, Compl. ¶ 47, more than three years before plaintiff filed the instant case. This timeline falls well outside the applicable 90-day statute of limitations for filing a civil action, *see* 42 U.S.C. § 2000e-16(c), and thus these claims are time-barred.[5]

The Complaint additionally references formal and informal EEO complaints plaintiff filed in 2014 and 2015, *see supra*, Part I.A.4., not involving BOP, *see* Compl. ¶ 12 (alleging that

---

[5]    Plaintiff has not attempted to argue that equitable tolling applies, *see generally* Compl., and the government is correct that this doctrine does not save plaintiff's additional claims, *see* Defs.' Mem. at 15. For equitable tolling to be applied, plaintiff would have to show "(1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way." *Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*, 71 F.4th 51, 58 (D.C. Cir. 2023) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Satisfying the second prong would require plaintiff to show that the circumstances that caused her delay in filing the case were "both extraordinary *and* beyond [her] control." *Id.* (emphasis in original) (quoting *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257 (2016)). Neither showing has been made in this case. *See generally* Compl.

plaintiff's employment with BOP began in October 2017), and even further attenuated in time than plaintiff's October 2019 EEO complaint. For instance, plaintiff entered into a settlement agreement to resolve her 2015 formal EEO complaint, number 570-2015-01009X, against the OPA on December 17, 2017, *see* Ex. II, ECF No. 3-3 at 250; Compl. ¶ 57, more than six years before plaintiff filed the instant case. Since these matters do not involve BOP and fall well outside the statute of limitations for filing a civil action, they may not properly be considered in this case.

In sum, plaintiff's only timely discrimination claims that may be considered are those against the Attorney General set out in her October 13, 2020, EEO complaint, number BOP-2020-02110.

### 1.    Disability Discrimination/Reasonable Accommodation Claims

Plaintiff alleges that defendants discriminated against her by denying her reasonable workplace accommodations despite knowing about her "long-documented history of a disability," Compl. ¶ 121, in the form of anxiety, *id.* ¶ 7, in violation of the Rehabilitation Act and the ADA, *id.* ¶¶ 106–22.

The Rehabilitation Act provides "the sole remedy for federal employees alleging such [disability] discrimination," *Tobey v. U.S. Gen. Servs. Admin.*, 480 F. Supp. 3d 155, 164 n.3 (D.D.C. 2020) (citing *Desmond v. Mukasey*, 530 F.3d 944, 952 (D.C. Cir. 2008)); *see also Montgomery v. McDonough*, 682 F. Supp. 3d 1, 13 n.11 (D.D.C. 2023), although the standards used to determine whether the Rehabilitation Act has been violated are the same as those applied under the ADA, *see Tobey*, 480 F. Supp. 3d at 164 n.3 (citing 29 U.S.C. § 794(d); *Solomon v. Vilsack*, 763 F.3d 1, 5 (D.C. Cir. 2014)). A reasonable accommodation claim under the Rehabilitation Act or ADA requires the plaintiff to show that "(1) she was a qualified individual with a disability, (2) the [employer] had notice of her disability and (3) the [employer] denied her request for a reasonable accommodation." *Waggel v. George Wash. Univ.*, 957 F.3d 1364, 1371

(D.C. Cir. 2020) (alterations in original) (quoting *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014)).    The ADA, in turn, defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A).

At the motion to dismiss stage, plaintiff does not have to plead specific facts to establish every element of a *prima facie* claim but must still allege enough facts to raise a claim for relief that is "plausible on its face." *Border v. Nat'l Real Est. Advisors, LLC*, 453 F. Supp. 3d 249, 256 (D.D.C. 2020) (citing *Twombly*, 550 U.S. at 570); *see also Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 156 (D.D.C. 2014) (allowing a claim to proceed past a motion to dismiss that was "at least plausible").    Assuming, *arguendo*, that plaintiff has pled sufficient facts for her anxiety to qualify as a disability, *see, e.g.*, Compl. ¶ 7, plaintiff's reasonable accommodation claim nevertheless fails to state a claim because she never alleges and provides no evidence that she requested any accommodations from BOP.

The complaint briefly mentions an accommodation request plaintiff made years earlier while employed at OPA, *see id.*, but "fails to provide any explanation" as to why BOP would have been aware of this request, Defs.' Mem. at 18, much less why this years-old request to a separate component of DOJ would have applied to BOP, *see generally* Compl.  While employed by BOP, plaintiff alleges only that she "request[ed] . . . the occasional supervisor or mentor on each assigned case to sit in on hearings, calls, or meetings with her," Compl. ¶ 117, and that she asked for one meeting to be rescheduled "at a convenient time, date, and location with all supervisors present," *id.* ¶ 72.  Neither allegation of one-off requests for a supervisor to join a call or meeting is sufficient to demonstrate that plaintiff requested from BOP an accommodation for her alleged disability, *see, e.g.*, *Waggel*, 957 F.3d at 1372 ("[I]ndividual requests for time off to attend medical appointments" were not a request for a reasonable accommodation under the ADA "standing alone," even where

employer had notice of the plaintiff's cancer diagnosis (citing *Flemmings v. Howard Univ.*, 198 F.3d 857, 861–62 (D.C. Cir. 1999))), either by "mak[ing] clear that [plaintiff] want[ed] assistance for . . . her disability," *Lee v. District of Columbia*, 920 F. Supp. 2d 127, 136 (D.D.C. 2013) (quoting *Loya v. Sebelius*, 840 F. Supp. 2d 245, 259 n.14 (D.D.C. 2012)), or by requesting an accommodation through a formal process established by BOP or DOJ, *see, e.g.*, *Waggel*, 957 F.3d at 1371–72 (discussing the plaintiff's failure to request an accommodation through the formal ADA process established by the defendant, of which the plaintiff had notice).

As the D.C. Circuit has held, "[a]n underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *Id.* at 1372 (quoting *Flemmings*, 198 F.3d at 861). Plaintiff has failed to establish that such a request was made, and therefore her disability discrimination claim must be dismissed for failure to state a claim.

### 2.    Title VII Claims

Plaintiff also alleges discrimination, in violation of Title VII, on the basis of her national origin, Compl. ¶¶ 123–24; sex, *id.* ¶¶ 125–26; race and color, *id.* ¶ 127; and parental status, *id.* ¶ 128. She additionally claims that this discrimination resulted in a hostile work environment, also in violation of Title VII. *Id.* ¶¶ 130–31. Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

#### *(a) Parental Status Claims*

As an initial matter, the government is correct that plaintiff's claims of discrimination and hostile work environment on the basis of her parental status must be dismissed for lack of subject matter jurisdiction. *See* Defs.' Mem. at 20 n.5.

Under the doctrine of sovereign immunity, "the United States may not be sued without its consent," which means that "the existence of consent is a prerequisite for jurisdiction" in suits against the United States. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). In this context, suits against federal officials in their official capacities are considered suits against the United States. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 826 (1976). A waiver of sovereign immunity by the federal government "must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations and internal citations omitted). Similarly, waivers of sovereign immunity are "strictly construed" in favor of the United States. *Orff v. United States*, 545 U.S. 596, 601–02 (2005). "To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Lane*, 518 U.S. at 192 (citing *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992)). The question whether sovereign immunity has been waived implicates courts' subject-matter jurisdiction, meaning that the plaintiff bears the burden of establishing that sovereign immunity has been abrogated by the federal government to prove that jurisdiction exists for a claim against the United States. *See Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006) (citing *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003)).

"Title VII is, without doubt, a statute that . . . specifically waives sovereign immunity." *Parker v. Califano*, 561 F.2d 320, 325 n.15 (D.C. Cir. 1977). The text of the statute, however, does not include parental status as a protected characteristic. *See* 42 U.S.C. § 2000e-2(a)(1)

(extending the protections of the statute to discrimination on the basis of "race, color, religion, sex, or national origin"). Title VII, therefore, does not waive the federal government's sovereign immunity from employment discrimination claims against the federal government on the basis of parental status, *see, e.g.*, *Benham v. Rice*, No. Civ.A. 0301127 (HHK), 2005 WL 691871, at *3 (D.D.C. Mar. 24, 2005) (dismissing a claim for discrimination based on parental status for lack of subject matter jurisdiction), and plaintiff has not established that subject matter jurisdiction otherwise exists for these claims. Plaintiff's claims for discrimination and hostile work environment on the basis of parental status must therefore be dismissed for lack of subject matter jurisdiction.

### (b) National Origin, Sex, & Race and Color Discrimination Claims

The statutory text of Title VII "establishes two elements for an employment discrimination case: (i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). When a plaintiff has no "direct evidence of discrimination," she must generally "resort to the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)," *Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006), which requires the plaintiff to prove "by a preponderance of the evidence 'that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination,'" *id.* (citation omitted).

To survive a motion to dismiss, plaintiffs claiming employment discrimination are "not required to plead every fact necessary to establish a *prima facie* case." *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011). Still, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678); *see also Webster v. Haaland*, No. 23-cv-3050 (RC), 2024 WL 4240286, at *5 (D.D.C. Sept. 19, 2024) ("To survive a motion to dismiss, claims of discrimination . . . require at least a minimal factual basis from which the Court can draw 'an inference of discrimination.'" (quoting *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007))).  Meeting this pleading standard requires alleging "some facts that demonstrate [the plaintiff's protected characteristic] was *the reason* for defendant's actions" and not "merely 'invok[ing] [the plaintiff's protected characteristic] in the course of a claim's narrative.'" *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 102 (D.D.C. 2021) (emphasis supplied) (quoting *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990)).

   The instant complaint "presents no facts to tie" the "difficult interpersonal events" described to any of plaintiff's protected characteristics and therefore fails to state a discrimination claim on any of the remaining grounds. *Burford v. Yellen*, 246 F. Supp. 3d 161, 179 (D.D.C. 2017).  The complaint describes the following events as adverse actions: (1) the selection of a "less qualified applicant over her" for an Attorney-Advisor position with BOP's Designation and Sentence Computation Center, Compl. ¶ 67; (2) the loss of benefits and opportunities due to her supervisors' "refus[al] to rate her as excellent on her performance evaluation without explanation," *id.* ¶ 68; (3) the decision of two CAO employees to work on the final decision in her first EEO complaint despite plaintiff having worked with both individuals, *id.* ¶ 69; (4) the denial of plaintiff's request to hold a meeting, which she originally requested to address alleged racial bias by agency staff, opposing counsel, and the judge in a case she was handling, at a "convenient time, date, and location" with all of her supervisors present, *id.* ¶¶ 70–72; (5) plaintiff's white male supervisors asking plaintiff questions about her allegations of discrimination and "challeng[ing]

her concerns," while plaintiff's Asian female supervisor "refused" to join the meeting, *id.* ¶¶ 73–74; (6) plaintiff's supervisors failing to give her credit for the resolution of the case and assigning her another case, *id.* ¶¶ 75–76; (7) plaintiff's supervisors "refusing her access" to a mandatory virtual meeting and responding passive aggressively to her communications, *id.* ¶ 77; (8) after plaintiff submitted her letter of resignation "[o]n or about October 16, 2020," *id.* ¶ 78, her supervisors did not acknowledge or otherwise respond to her resignation letter or plan with her to resolve or transfer the cases for which she was responsible, *id.* ¶ 79; and (9) an individual "refused to provide" plaintiff with her "10-year federal service recognition certificate," *id.* ¶ 80. The complaint concludes that these events and actions were the result of discrimination, since plaintiff was "the only Nigerian-American" employed in her office, *id.* ¶ 124; "the only cis-gendered female" employed in her office, *id.* ¶ 126; "the only dark-skinned black person" employed in her office, *id.* ¶ 127; and "the only parent" employed in her office, *id.* ¶ 128.

These allegations, however, are no more than "mere 'legal conclusions couched a[s] factual assertions,'" that are insufficient to survive a motion to dismiss. *Yuvienco v. Vilsack*, No. 23-cv-186 (RC), 2024 WL 727712, at *3 (D.D.C. Feb. 22, 2024) (quoting *Nurriddin*, 818 F.3d at 756); *see also id.* ("Although the 'initial burden' of pleading Title VII's 'because of' element is 'not onerous,' a plaintiff cannot survive a motion to dismiss by providing 'threadbare' or conclusory allegations of discrimination; nor can a plaintiff state a claim 'merely [by] invok[ing] [her] race [or national origin], in the course of a claim's narrative." (alterations in original) (quoting and citing *Doe #1*, 554 F. Supp. 3d at 102–03)). Although plaintiff "identifies . . . instances of alleged mistreatment" by employees of BOP, she "fails to connect any of those events to" her national origin, sex, race, or color. *Lee v. McDonough*, No. 22-cv-319 (RBW), 2024 WL 3858820, at *7 (D.D.C. Aug. 19, 2024). Put simply, plaintiff's complaint alleges no facts or evidence that would

allow the drawing of any reasonable inference that any of the events or actions she alleges were the result of discrimination on any protected characteristics she may have. *See Brown v. Sessoms*, 774 F.3d 1016, 1020 (D.C. Cir. 2014) ("[T]he plaintiff must provide 'factual content [in her complaint] that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (second alteration in original) (quoting *Iqbal*, 556 U.S. at 678)). These deficiencies require dismissal of plaintiff's remaining claims. *See, e.g.*, *Yuvienco*, 2024 WL 727712, at *3 (dismissing plaintiff's employment discrimination because plaintiff's claims were "predicated on . . . vague and conclusory allegations, and she [made] little connection between her employment issues and her [protected characteristics]"); *Thweatt v. WMATA*, No. 23-cv-1185 (CKK), 2024 WL 939989, at *4 (D.D.C. Mar. 5, 2024) (dismissing plaintiff's employment discrimination claims because the "facts alleged in the complaint do not link directly or indirectly plaintiff's [protected characteristics]" to the adverse employment action).

### (c)  *Hostile Work Environment/Constructive Discharge Claims*

Plaintiff's hostile work environment claims fail for the same reasons. Establishing a *prima facie* Title VII hostile workplace claim requires plaintiff to show "(1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment occurred because of her protected status; and (4) the harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment." *Harrison v. Off. of Architect of Capitol*, 964 F. Supp. 2d 71, 77–78 (D.D.C. 2013) (citing *Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1122–23 (D.C. Cir. 2002); *Curry v. District of Columbia*, 195 F.3d 654, 660 (D.C. Cir. 1999)). Here, too, plaintiff is "not required to plead every fact necessary to establish a *prima facie* case," *Jones*, 642 F.3d at 1104, but must plead enough facts to allow the court to "draw the reasonable inference that the defendant is liable for

the misconduct alleged," *Harris*, 791 F.3d at 68 (quoting *Iqbal*, 556 U.S. at 678). *See also supra*, Part III.B.2.(b).

Plaintiff does not plead any additional facts to support her hostile work environment claims, but instead merely incorporates the same actions and events previously enumerated. *See* Compl. ¶¶ 130, 131. Just as with plaintiff's discrimination claims, *see supra*, Part III.B.2.(b)., none of these allegations contain any facts or evidence to allow the drawing of any reasonable inferences, that any of the actions alleged were due to any of plaintiff's claimed protected categories, beyond plaintiff's conclusory say so. Just as with plaintiff's attempt to claim discrimination, these deficiencies mean plaintiff's hostile work environment allegations fail to state a claim and thus must be dismissed. *See id.*[6]

## IV.    CONCLUSION

For the foregoing reasons, taking the alleged facts in plaintiff's complaint as true, plaintiff's claims must be dismissed, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  January 1, 2025

_____
**BERYL A. HOWELL**
United States District Judge

---

[6]    Since plaintiff's hostile work environment claims fail, her constructive discharge claim also necessarily fails, since this allegation is predicated on the existence of a hostile work environment. *See* Compl. ¶¶ 130, 131. With respect to the claim of a constructive discharge, plaintiff's complaint never alleges that she submitted her resignation due to any workplace issues, much less a hostile workplace environment. *See generally id.*; *see also id.* ¶ 78. In fact, the only time plaintiff actually alleges that "a hostile work environment" existed was on October 20, 2020, *id.* ¶ 79, four days after plaintiff submitted her resignation, *see id.* ¶¶ 78, 79, which means even this allegedly hostile environment could not be considered as a reason for plaintiff's resignation.